Wendy A. Mitchell (CA SBN 158553)
Nicholas R. Farnolo (*pro hac vice* anticipated)
Napoli Shkolnik, PLLC
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
(212) 397-1000
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY LOMAX, ETHAN HANCOCK, RENADA HARDAY, EMILEE LANDRETH, DEVRON TROTT, JOSHUA ROBLES, KAREN DORTON, NOOR MOUSAWI, JOSHUA NOYES, KINGSLEY NIMOH, SHAUN COX, CHAD LERMAN, RUSSELL WELLS, ADRIAN WOOLDRIDGE, JOSH PENDERGRASS, JONATHAN GEDRICH, RODNEY BATES, KAMARIA BROWN, SHAMIN KHAN, CHRISTOPHER EDWARDS, JORGE SALAZAR, RICHARD TROUNG, TRAVIS SIDES, SANDEEP KUMAR, ANTHONY KARAS, ED KANGOS, LATSAMY SENGSOURICHANH, GREGORY NALBANDIAN AND RILEY TODD | **CLASS ACTION COMPLAINT**<br><br>Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMEGES FOR:**<br><br>(1) BREACH OF CONTRACT;<br>(2) NEGLIGENCE;<br>(3) BREACH OF FIDUCIARY DUTY;<br>(4) BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING<br>(5) BREACH OF EXPRESS AND IMPLIED WARRANTIES<br><br>**DEMAND FOR JURY TRIAL** |
| Plaintiff, | |
| vs. | |
| ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, ROBINHOOD MARKETS, INC., and DOES 1-50, | |

Defendants.

## I. PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COME NOW the Plaintiffs ETHAN HANCOCK, RENADA HARDAY, JIMMY LOMAX, EMILEE LANDRETH, DEVRON TROTT, JOSHUA ROBLES, KAREN DORTON, NOOR MOUSAWI, JOSHUA NOYES, KINGSLEY NIMOH, SHAUN COX, CHAD LERMAN, RUSSELL WELLS, ADRIAN WOOLDRIDGE, JOSH PENDERGRASS, JONATHAN GEDRICH, RODNEY BATES, KAMARIA BROWN, SHAMIN KHAN, CHRISTOPHER EDWARDS, JORGE SALAZAR, RICHARD TROUNG, TRAVIS SIDES, SANDEEP KUMAR, ANTHONY KARAS, ED KANGOS, LATSAMY SENGSOURICHANH, GREGORY NALBANDIAN AND RILEY TODD file this Complaint seeking judgment against Defendants ROBINHOOD FINANCIAL LLC, a Delaware corporation; ROBINHOOD SECURITIES, LLC, a Delaware corporation; ROBINHOOD MARKETS, INC., a Delaware corporation, and DOES 1- 50, inclusive, (hereinafter collectively referred to as "Defendants" or "Robinhood") for damages resulting from Robinhood's purposefully, willfully, and knowingly restricting access to the open markets in publicly available securities, and thereby depriving retail investors from investing additional monies into the market through these securities, and openly manipulating the open market to the detriment of

all Plaintiffs and the market at large by restricting purchase—without universal restrictions across the market by regulators—of this non-exhaustive list of tickers $AAL, $AMC, $BB, $BBY, $CTRM, $EXPR, $GME, $KOSS, $NAKD, $NOK, $SNDL, $TR, and $TRVG ("Restricted Tickers") and respectfully allege follows:

## II. NATURE OF THE ACTION

1.     Robinhood is a multibillion-dollar mobile application and website investment service that places stock trade orders on behalf of users like Plaintiff and Class members. Robinhood targets young adults who are new to investing through youth-forward marketing and a video game-like interface and misleads them into using Robinhood by promising "commission free" and "discounted" trading services and assuring them in its Customer Agreements that all of Robinhood's transactions will be subject to federal and state securities laws. Robinhood has been wildly successful, roping in not only young investors but also novice investors of all ages.

2.     In the early morning hours of January 28, 2021, in the midst of an unprecedented rise in the per share value of the Restricted Tickers, Robinhood without providing prior notice to its users or the market at large restricted solely on its platform the purchase of the Restricted Tickers. Robinhood, did however allow its users to "close their positions." Closing positions, given the suffocation of additional purchases through the Robinhood app would be dubious as the price per share of the Restricted Tickers plummeted.

3.    Robinhood's claim is that their mission is to "democratize finance for all." And that they were restricting transactions for certain securities to position closing only on the Restricted Tickers. Further, they remain committed to the same restriction. On January 29, 2021, rather than lift the restrictions in their entirety Robinhood implemented "capped restrictions." Robinhood allowed the trades of Restricted tickers but limited the total number of shares that each account would be able to hold. They set aggregate limits for each of the Restricted Tickers to the tune of the following: $AAL (55 shares), $AMC (115 shares), $BB (65 shares), $BBBY (30 shares), $CTRM (1650 shares), $EXPR (200 shares), $GME (5 shares), $KOSS (25 shares), $NAKD (750 shares), $NOK (110 shares), $SNDL (1200 shares), $TR (25 shares), and $TRVG (400 shares).

4.    In the early afternoon on the same day Robinhood again pulled the rug out from under its account holders by further restricting some of the Restricted Tickers: $AMC (25 shares), $BB (25 shares), $GME (2 shares), $KOSS (10 shares), $NAKD (300 shares), and $NOK (50). Coincidentally, these are the stock tickers that were increasing during trading on January 29, 2021.

5.    By late afternoon, January 29, 2021, there were reports that Robinhood has even further restricted $AMC (10 shares) and $GME (1 share). And extended restrictions to other retail stocks like $WKHS without prior notice. Additionally, $WKHS a retail stock that was not a part of the momentous rise of the Restricted Tickers was also restricted, and such restriction caused losses. Finally, towards the

end of the trading day and through the after-hours market, Robinhood restricted many of the Restricted Tickers and others to 1 share per account ($AMC, $BB, $BBY, $GME, $KOSS) and other retail tickers to 5 shares.

6.     The conduct of Robinhood and DOES 1-50 violated their obligations under relevant federal and state law, including California law. Specifically, Robinhood's acts and omissions breached Robinhood's agreements with Plaintiffs and Class Plaintiffs, fiduciary duty to Plaintiffs and Class Plaintiffs, committed fraud, breaches of express and implied warranties.

## III. JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(a), because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and this is a class action in which there are numerous Class members who are citizens of states different from Defendants.

8.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood, distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the acts and omissions that gave rise to this

Complaint occurred or emanated from this District.

9. This Court has personal jurisdiction over Robinhood because it is authorized to do business and does conduct business in California, and because it has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## IV. PARTIES

10. Plaintiff Jimmy Lomax resides in and is a citizen of Long Beach, California. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

11. Plaintiff Ethan Hancock resides in and is a citizen of Carmel, Indiana. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

12. Plaintiff Renada Hardy resides in and is a citizen of Lewistown, North Carolina. He is an active trader that uses the Robinhood platform. On or around

January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

13.   Plaintiff Emilee Landreth resides in and is a citizen of Rosman, North Carolina. She is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

14.   Plaintiff Devron Trott resides in and is a citizen of Peachtree City, Georgia. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

15.   Plaintiff Joshua Robles resides in and is a citizen of Chicago, Illinois. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

16.   Plaintiff Karen Dorton resides in and is a citizen of Eatonton, Georgia. She is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to

purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

17.    Plaintiff Noor Mousawi resides in and is a citizen of Dearborn, Michigan. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

18.    Plaintiff Joshua Noyes resides in and is a citizen of Bangor, Maine. She is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

19.    Plaintiff Kingsley Nimoh resides in and is a citizen of Hawthorne, California. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

20.    Plaintiff Shaun Cox resides in and is a citizen of Jacksonville, Florida. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of

the restrictions put in place by Robinhood.

21.     Plaintiff Chad Lerman resides in and is a citizen of Reno, Nevada. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

22.     Plaintiff Russell Wells resides in and is a citizen of Oklahoma City, Oklahoma. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

23.     Plaintiff Adrian Woolridge resides in and is a citizen of Dallas, Texas. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

24.     Plaintiff Josh Pendergrass resides in and is a citizen of Merced, California. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

25.    Plaintiff Rodney Bates resides in and is a citizen of Norman, Oklahoma. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

26.    Plaintiff Kamaria Brown resides in and is a citizen of Plainfield, Illinois. She is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

27.    Plaintiff Shamin Khan resides in and is a citizen of Woodhaven, New York. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

28.    Plaintiff Christopher Edwards resides in and is a citizen of Aurora, Colorado. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

29.    Plaintiff Jorge Salazar resides in and is a citizen of Augusta, Georgia. He

is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

30.    Plaintiff Richard Truong resides in and is a citizen of Spencer, Iowa. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

31.    Plaintiff Travis Sides resides in and is a citizen of Crystal River, Florida. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

32.    Plaintiff Sandeep Kumar resides in and is a citizen of Naperville, Illinois. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

33.    Plaintiff Anthony Karas resides in and is a citizen of Bastrop, Texas. He is an active trader that uses the Robinhood platform to access the markets. On or

around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

34.    Plaintiff Ed Kangos resides in and is a citizen of Glastonbury, Connecticut. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

35.    Plaintiff Latsamy Sengsourichanh resides in and is a citizen of Saint Louise, Missouri. She is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

36.    Plaintiff Gregory Nalbandian resides in and is a citizen of Chatsworth, California. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

37.    Plaintiff Riley Todd resides in and is a citizen of Cumming, Georgia. He is an active trader that uses the Robinhood platform to access the markets. On or around January 28, 2021, Plaintiff logged into the app for brokerage services to

purchase one or more of the Restricted Tickers. He was unable to do so because of the restrictions put in place by Robinhood.

38.    Defendant Robinhood Markets, Inc. is a financial service holding company incorporated in Delaware with its principal place of business located at 85 Willow Road, Menlo Park, CA 94025. It is the holding company for Defendants Robinhood Financial LLC and Robinhood Securities, LLC. Defendant Robinhood Markets, Inc. is a named party to the Robinhood Terms & Conditions Agreement governing Robinhood's website and mobile applications. Defendant Robinhood Markets, Inc. facilitated, participated in, and communicated the acts and omissions to Plaintiff and Class Members that caused the harm.

39.    Defendant Robinhood Financial LLC is a full-service securities firm incorporated in Delaware with its principal place of business located at 85 Willow Road, Menlo Park, CA 94025. Defendant Robinhood Financial LLC is a wholly owned subsidiary of Defendant Robinhood Markets, Inc., and an affiliate of Defendant Robinhood Securities, LLC. It is an "introducing" broker-dealer, offering brokerage services to retail investors and allowing customers to open online accounts and electronically deposit funds. It is a named party to the Robinhood Terms & Conditions Agreement governing Robinhood's website and mobile applications. It is also a party to the Robinhood Customer Agreements, governing the purchase, sale, or carrying of securities or contracts relating thereto and/or the borrowing of funds. Defendant Robinhood Financial LLC facilitated, participated in, and communicated

to the Plaintiffs and Class Members the acts and omissions that led to the harm alleged herein.

40.    Defendant Robinhood Securities, LLC is a full-service securities firm incorporated in Delaware with its principal place of business located at 85 Willow Road, Menlo Park, CA 94025. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc., and an affiliate of Defendant Robinhood Financial LLC. Once a customer creates an account with Robinhood Financial LLC, Defendant Robinhood Securities is the custodian of customers' funds and the securities customers purchase. It services customer accounts; executes, clears, and settles customer trades; prepares and distributes customer account statements and trade confirmations; and extends credit to customer margin accounts. It is a party to the Robinhood Customer Agreements governing the purchase, sale, or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through it. Defendant Robinhood Securities, LLC facilitated, participated in, and communicated the acts and omissions that led to the harm alleged herein to Plaintiffs and Class members herein.

41.    At all times herein mentioned, there existed a unity of interest, and activity in furtherance of that interest, among Robinhood and other Defendants such that any individuality and separateness among them has ceased, and these Defendants are the alter egos of each other with respect to operations.

42.    The true names and capacities of those defendants designated as DOES 1-50,

whether individual, corporate, association or otherwise, are unknown to Plaintiffs and Class Members at the time of filing this Complaint and Plaintiffs, therefore, sue said defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the DOE defendants is, in some manner, responsible for the events and happenings herein set forth and proximately and/or directly caused injury and damages to Plaintiffs as herein alleged.

## V. FACTUAL ALLEGATIONS

43.    Robinhood is an online brokerage firm that states its mission is to "to democratize finance for all. We believe that everyone should have access to the financial markets, so we've built Robinhood from the ground up to make investing friendly, approachable, and understandable for newcomers and experts alike."[1] Robinhood provides access to the markets: equities, options, and crypto currencies using its web based, or smartphone-based applications.

44.    As a part of its populist-based marketing and mission, Robinhood's official Twitter posted, "Let the people trade."

45.    As a part of the suite of services that Robinhood provides, it facilitates

_____

[1] https://robinhood.com/us/en/support/articles/our-mission/

buy and sell orders of securities as a broker-dealer. Robinhood also facilitates the purchase of option contracts ("options").

46.     Robinhood has experienced significant growth as a relatively new online brokerage firm. In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation. The firm markets itself primarily to younger investors and claims over 10 million users of its trading platform.

47.     On or around January 11, 2021, the stock for GameStop Corp., ("$GME") began to rise. At that time, Robinhood allowed retail investors access to the same without restriction.

48.     On or around January 26, 2021, the stocks for AMC Entertainment holdings, Inc., ("$AMC") began to rise.

49.     On or around January 26, 2021, the stocks for Nokia Corporation ("$NOK") began to rise.

50.     On or around January 26, 2021, the stocks for Naked Brand Group Ltd., ("$NAKD") began to rise.

51.     On or around January 26, 2021, the stocks for Blackberry Ltd., ("$BB") began to rise.

52.     On or around January 26, 2021, the stocks for Express, Inc., ("$EXPR") began to rise.

53.     On or around January 26, 2021, the stocks for Express, Inc., ("$SNDL") began to rise.

54.    $GME continued to rise.

55.    Upon information and belief, unbeknownst to Robinhood users and the market at large, Robinhood unilaterally removed tickers from its trading platform.

56.    This meant that retail investors could no longer purchase the rising tickers, or even search for them. Robinhood did this without providing notice to its users, or the market at large.

57.    Upon information and belief, Robinhood's actions were done purposefully and knowingly to manipulate the market for the benefit of large investors and financial intuitions who were not Robinhood's customers, or retail traders.

58.    These unilateral and unannounced acts did several things: 1) it locked Robinhood users into positions as the prices of these shares began to free fall; 2) It prevented Robinhood users for purchasing more shares at lower prices to average down their costs bases; 3) It prevented Robinhood users from shorting the stocks; and it deprived the market for a large percentage of the retail market buying power causing all positions to free fall.

59.    All of Robinhood's acts were intentional and caused harm. In sum, Robinhood has completely blocked retailer investors from purchasing Restricted Tickers for no legitimate reason, thereby depriving retailer investors from the benefits of Robinhood's services in giving access to the market.

60.    Additionally, for many users as their money was tied up with Robinhood they could not withdraw and simply trade positions on the day.

61.    The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Robinhood has breached these, among other, obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

62.    On January 28, 2021, it was announced that Robinhood secured an additional billion dollars in funding.[2]

## VI. CLASS ACTION ALLEGATIONS

63.    Plaintiffs seek relief on behalf of themselves and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), Plaintiffs seek certification of a Nationwide class defined as follows:

[2] https://www.nytimes.com/2021/01/29/technology/robinhood-fundraising.html

## VII.ALL PERSONS WHO USED ROBINHOOD'S BROKERAGE SERVICES BETWEEN JANUARY 20, 2021 AND THE END OF THE RESTRICTION PERIOD ON THE RESTRICTED TICKERS. (THE "ROBINHOOD CLASS").

64.    Plaintiff seeks relief on behalf of themselves and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), Plaintiffs seek certification of a Nationwide subclass defined as follows:

## VIII.ALL PERSONS AND ROBINHOOD CUSTOMERS IN THE UNITED STATES WHO HELD SHARES OF THE RESTRICTED TICKERS IN THEIR BROKERAGE ACCOUNTS BETWEEN JANUARY 28, 2020 AND THE END OF SUCH RESTRICTIONS AND SOLD SHARES OF THE RESTRICTED TICKERS AT A LOSS. (THE "LOSS OF VALUE CLASS").

65.    Plaintiffs seek relief on behalf of themselves and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), Plaintiff seeks certification of a Nationwide subclass defined as follows:

IX. **ALL PERSONS AND ROBINHOOD CUSTOMERS IN THE UNITED STATES WHO HELD SHARES OF THE RESTRICTED TICKERS IN THEIR BROKERAGE ACCOUNTS BETWEEN JANUARY 28, 2020 AND THE END OF SUCH RESTRICTIONS AND SOUGHT TO PURCHASE ADDITIONAL SHARES OF THE RESTRICTED TICKERS. (THE "LOSS OF ADDITIONAL INVESTMENT VALUE CLASS").**

66.    Plaintiffs seek relief on behalf of themselves and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), Plaintiffs seek certification of a Nationwide subclass defined as follows:

X. **ALL PERSONS AND ROBINHOOD CUSTOMERS IN THE UNITED STATES WHO USED ROBINHOOD'S BROKERAGE SERVICES BETWEEN JANUARY 20, 2021 AND THE END OF THE RESTRICTION PERIOD ON THE RESTRICTED TICKERS THAT HELD SHARES AND SOLD AT A LOSS. (THE "SOLD AT LOSS CLASS").**

67.    Additionally, or in the alternative, Plaintiffs seek relief on behalf of himself and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), Plaintiffs seek certification of a Class defined as follows:

XI. **ALL ROBINHOOD CUSTOMERS WITHIN THE STATE OF CALIFORNIA ("CALIFORNIA CLASS").**

68.    Additionally, or in the alternative, Plaintiffs seek relief on behalf of themselves and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3), Plaintiff seeks certification of a Class defined as follows:

## XII. **ALL ROBINHOOD CUSTOMERS WITHIN THE STATE OF CALIFORNIA WHO WERE NOT ABLE TO EXECUTE TRADES ON THE RESTRICTED TICKERS AND OTHER SECURITIES AFTER ROBINHOOD KNOWINGLY, WILLFULLY, AND PURPOSEFULLY REMOVED COMPLETELY FROM THEIR PLATFORM ("CALIFORNIA LOSS CLASS").**

69.    Excluded from the Classes are Robinhood and any of its affiliates, parents, or subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

70.    Plaintiffs hereby reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Classes meet the criteria for certification under Rules 23(a) and (b)(3).

71.    **Numerosity:** The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based

on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to ten million. Subclass members are likely in the thousands. All Class and Subclass members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

72.    **Commonality:** Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

    a. Did Robinhood knowingly fail to provide the financial services it agreed to with its users that were needed to handle reasonable consumer demand, including trading securities that are available on every other competitive trading platform?

    b. Did Robinhood fail to provide the duty of care to its customers when it purposefully, and without prior notice, removed $GME, $BB, $AMC, $SNDL, $NOK, $NAKD and others?

    c. Did Robinhood remove $GME, $BB, $AMC, $SNDL, $NOK, $NAKD and others to pass harm and risk purposefully and intentionally from their industry partners to its own customers' positions in the Restricted Tickers and benefit itself and its industry partners financial gains?

    d. Did Robinhood violate FINRA Rule 5310, among other FINRA rules, state rules, and federal regulations?

    e. Did Robinhood violate consumer protection laws by failing to disclose that its services would not include the ability to trade on $GME, $BB, $SNDL, $NOK, $NAKD, and other tickers, for substantial periods of time?

f.  Did Robinhood breach its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services?

g.  Did Robinhood breach its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services as described herein?

h.  Was Robinhood negligent or grossly negligent by failing to provide financial services in a timely manner due to its own possible nefarious desires, or the desires of industry partners?

i.  Did Robinhood breach its fiduciary duties to its customers by failing to provide adequate access to financial services as promised?

j.  Was Robinhood unjustly enriched by its conduct?

k.  Were Plaintiffs and the other Class members injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief?

l.  Whether Plaintiff and the other Class members are entitled to injunctive and declaratory relief.

73.  **Typicality:** The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a customer during the class period and was unable to trade the Restricted Tickers and place time-sensitive trades on $GME, $BB, $AMC, $SNDL, $NOK, $BBBY, $KOSS, $NAKD, and others and sustained damages as a result of Robinhood's wrongful conduct.

74.  **Adequate Representation:** Plaintiffs will fairly and adequately

represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiffs have retained competent counsel experienced in prosecuting complex class actions, including those involving financial services, and they will vigorously litigate this class action.

75. **Predominance and Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of a class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the relatively modest damages sustained by most individual members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

76. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

77. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B)

because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

78.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

79.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

80.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

## XIII. CAUSE OF ACTION – BREACH OF CONTRACT

81.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, namely paragraphs 1 to 68.

82.     To use the Robinhood platform, a potential customer must enter into the Customer Agreement with Robinhood.

83.     Plaintiffs and all putative Class Members entered into a Customer Agreement with Robinhood.

84.     Robinhood breached the Agreement by failing to not only provide advance notice of removal of heavily traded and highly profitable stock tickers and implementing the strictest restrictions on the same. Robinhood breached its Customer Agreement by, among other things, failing to disclose that its platform was going to randomly pull profitable stocks from its platform at a time they were most profitable; and that Robinhood failed to provide an adequate explanation to their customers; and that Robinhood knowingly put their customers at a disadvantage compared to customers who used other trading apps; and that Robinhood failed to provide access to its own financial incentives to pull the Restricted Tickers including $GME, $BB, $AMC, $SNDL, $NAKD AND $NOK among others; that Robinhood's actions were

a direct breach of the Agreement by failing to perform in a timely manner (or at all) under the contract; and that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers.

85.    Robinhood breached its Customer Agreement with Plaintiffs and class members as a result of the aforementioned actions.

86.    Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings, as necessary.

## XIV. CAUSE OF ACTION – NEGLIGENCE

87.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, namely paragraphs 1 to 74.

88.    Robinhood had a duty to exercise reasonable care to not manipulate the market.

89.    Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers in the open market.

90.    Robinhood breached its duties by removing the Restricted Tickers from its trading platform without prior notice to its users or to the market at large. The

removal of the Restricted Tickers not only harmed Plaintiffs and its Class Member users, but also harmed those that held shares of the Restricted Tickers in the market at large.

91.    Robinhood essentially abandoned its customers, and in so doing, caused a market effect that drove the price of the Restricted Tickers down and caused Plaintiffs and Class members to suffer damages.

92.    Robinhood showed a wanton and reckless disregard for the effect its actions would have on the Plaintiffs, Class Members, and open market. Moreover, Robinhood did not undertake these actions due to "market volatility" as it later claimed, as these Restricted Tickers were continually traded save a few "halts" by the actual exchanges.

93.    Robinhood's negligence and gross negligence, harmed Plaintiffs, Class Members, and market participants by forcing them to incur significant losses in the marketplace by first removing the Restricted Tickers on January 28, 2021 from the trading platform without notice, and later imposing excessive and unwarranted restrictions on the tickers that in some instances changed, again without notice, from allowing the trading of 115 $AMC shares in the morning to 1 $AMC share in the late afternoon on January 29, 2021 and as a result the price decreased.

## XV. CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY

94.    Plaintiff incorporates the preceding paragraphs by reference as if set

forth fully in this section, namely paragraphs 1 to 81.

95.    As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf. Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

96.    Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that its platform was going to remove

$GME, $BB, $AMC, $SNDL, $NOK, $NAKD, $WKHS and other purchases in a timely manner; actually removing $GME, $BB, $AMC, $SNDL, $NOK, $BBBY, $KOSS, $NAKD and others; removing $GME, $BB, $AMC, $SNDL, $NOK, $BBBY, $KOSS, $NAKD and others for its own pecuniary benefits; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

97.    Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings, as necessary.

## XVI. CAUSE OF ACTION - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

98.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, namely paragraphs 1 to 85.

99.   Plaintiffs and members of the Class and Subclass entered into the Customer Agreement with Defendant Robinhood to open a Robinhood trading account. They agreed to Robinhood's Terms and Conditions by using Robinhood's website and trading platform.

100.   Plaintiffs and members of the Class and Subclass fulfilled their obligations under these contracts by adhering to their terms and using Robinhood's trading services through its website and trading platform.

101.   Robinhood was obligated to provide the trading services required under those contracts at all times, including but not limited to, trades for $GME, $BB, $AMC, $SNDL, $NOK, $KOSS, $NAKD, and later $WKHS and others.

102.   When initially signing up for Robinhood, Plaintiff and all those similarly situated could and most actually did trade $GME, $BB, $AMC, $SNDL, $NOK, $KOSS, $NAKD, and later $WKHS and others.

103.   Robinhood unfairly interfered with the rights of Plaintiffs and members of the Class and Subclasses to receive the benefits of the Customer Agreement by, among other things, (i) failing to provide services necessary to carry out a trade; (ii)

failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely member of the drastic changes in trading abilities; and (iv) prohibiting plaintiffs from buying GME for Robinhood's own pecuniary interest and not disclosing those interest to Plaintiffs and all Class and Subclasses members.

104.    Robinhood's conduct has caused Plaintiffs and members of the Class and Subclass harm, losses, and damages. These losses reflect damages to Plaintiffs and members of the Class and Subclass in an amount to be determined at trial or separate proceedings, as necessary.

## XVII. BREACH OF EXPRESS AND IMPLIED WARRANTIES

105.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, namely paragraphs 1 to 92.

106.    Robinhood warranted that their trading platform would provide access to the stock market, and that by using it, its users would be able to buy and sell shares.

107.    On January 28 & 29 of 2021, Robinhood breached those warranties by preventing and prohibiting its users to buy shares in the Restricted Tickers. Meanwhile the rest of the market was able to buy, short sell, and trade those securities.

108.    As a direct result of Robinhood's breaches, Plaintiffs and Class Members were harmed and sustained damages.

# XVIII. RELIEF REQUESTED

WHEREFORE each Plaintiffs and Class Members pray for judgment against Robinhood and, as appropriate to each cause of action alleged and as appropriate to the standing of Plaintiffs, as follows:

1. Immediate injunction requiring Robinhood to reinstatement of all the retail tickers in question on their trading platform;

2. An award for Plaintiffs and Class Members' damages;

3. An award for attorney's fees and costs;

4. Punitive or exemplary damages according to proof; and

5. prejudgment interest;

6. post-judgment interest;

7. for such other and further relief as this Court may deem just and proper.

Dated: January 27, 2023.

Respectfully submitted,

Wendy A. Mitchell (CA SBN 158553)
Nicholas R. Farnolo  (*pro hac vice* anticipated)
Napoli Shkolnik, PLLC
400 Continental Boulevard, 6th Floor
El Segundo, CA 90245
(212) 397-1000

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues which may be tried by a jury.

Napoli Shkolnik PLLC

Dated: January 27, 2023.

Wendy A. Mitchell (CA SBN 158553)
*Attorneys for Plaintiff*